Filed 9/19/14  P. v. Joiner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES JOINER,<br><br>    Defendant and Appellant. | D064432<br><br><br>(Super. Ct. No. MH101115) |


APPEAL from an order of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed.

Rebecca P. Jones, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

In this second appeal, Charles Joiner challenges an order—which the trial court reinstated on remand after we issued both a majority opinion and a concurring and dissenting opinion in his first appeal (*People v. Joiner* (Feb. 8, 2013, D056622) [nonpub. opn.] (*Joiner I*))—involuntarily committing him for an indeterminate term to the custody of the State of California Department of Mental Health (DMH), now the State of California Department of State Hospitals (DSH), at the Coalinga State Hospital after a second jury in late 2009 unanimously found he is a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code,[1] § 6600 et seq.).

As discussed more fully, *post*, Joiner's first trial ended in a mistrial when the jury became hopelessly deadlocked after voting eight to four in favor of finding Joiner was not an SVP. Before the second trial commenced, the trial court denied Joiner's motion to dismiss the SVPA civil petition on the ground the court believed it had no authority to dismiss the petition for insufficiency of the evidence presented at the first trial. After the second jury returned its unanimous verdict finding that Joiner was an SVP, the court again denied Joiner's motion to dismiss the petition for the same reason and entered an order committing him to the custody of the DMH for an indefinite term. In *Joiner I*, Joiner challenged both the denial of his motion to dismiss the petition and the

_____

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise specified.

commitment order. This court issued a majority opinion reversing the commitment order and remanding the matter with directions that the court rule on the merits of Joiner's motion to dismiss based on a review of the evidence presented at the *first* trial.

At the July 2013 remand hearing, which Joiner did not personally attend but at which he was represented by his trial counsel, the court again denied his motion to dismiss the petition and reinstated the order of involuntary commitment under the SVPA based on the second jury's verdict, finding the prosecution had presented sufficient evidence at the first trial to support a finding beyond a reasonable doubt by a reasonable trier of fact that Joiner is an SVP.

*Contentions*

Joiner again appeals, contending the commitment order should be vacated and he should be released immediately because (1) he had a constitutional due process right to be personally present during the remand hearing on his motion to dismiss the petition, and the court prejudicially erred by conducting that hearing in his absence without his consent or personal waiver; and (2) there is insufficient evidence as a matter of law to commit him under the SVPA because no substantial evidence was presented at the first trial to support findings that (a) he is likely to commit a predatory act of sexual violence if released, (b) he "lack[s] volitional control over sexually aggressive behavior," and (c) he has "a current mental disorder tied to sexual misconduct." For reasons we shall explain, we reject these contentions and affirm the SVPA commitment order.

3

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*[2]

1. *The People's case*

a. *Joiner's sexual assault history*

i. *Frances B.*

On December 31, 1979, Joiner raped an acquaintance, Frances B. Joiner drove her to a dark and secluded place, where he made sexual advances on her and she resisted. In response, Joiner slapped Frances three times, threw her against his car, threw her to the ground, and choked her. After threatening her, Joiner then raped Frances. After being raped, Frances tried to escape from Joiner by jumping over a fence. In doing so she severed a finger and Joiner was able to recapture her and take her back to his car.

As a result of his assault on Frances, Joiner was charged with kidnapping, forcible rape and forcible oral copulation. Joiner was allowed to plead guilty to kidnapping in exchange for the prosecutor's agreement to dismiss the other charges.

---

2      As the SVPA commitment order that Joiner challenges in this second appeal is based on the unanimous verdict of the second jury at the November 2009 retrial, the following summary of the facts—most of which was set forth in this court's prior opinion in *Joiner I*—is derived from the record of the evidence presented at that *second* trial. To the extent the evidence presented at the *first* trial—which the trial court reviewed on remand in ruling on the merits of Joiner's postmistrial motion to dismiss the petition—is pertinent to the issues Joiner raises in this new appeal, that evidence will be addressed, *post*, in the discussion section of this opinion. We take judicial notice of the record on appeal filed in this court in *Joiner I*. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

ii. *Jill H.*

Prior to December 12, 1980, Joiner raped another acquaintance, Jill H. On December 12, 1980, Joiner went to Jill's home, knocked on her front door and told her "[Y]ou are out telling people I raped you. We are going to make it happen." Joiner then entered Jill's home, knocked her to the floor, raped her and attempted to force her to orally copulate him. Jill resisted and Joiner raped her a second time. Joiner's assault was interrupted when another man entered the home and stopped Joiner.

Joiner pleaded guilty to felony assault on Jill.

iii. *Patricia D.*

On July 4, 1984, less than a year after being released on parole, Joiner attempted to rape a neighbor, Patricia D., and force her to orally copulate him. Joiner went to Patricia's house and made sexual advances toward her, which she rejected. In response, Joiner grabbed Patricia by the wrists, dragged her to her bedroom, choked her and threatened to kill her and burn her house down if she resisted. After removing Patricia's panty hose and panties, he discovered she was menstruating. Patricia then informed Joiner she had herpes. When Joiner tried to force her to orally copulate him, Patricia told him she had oral herpes. Joiner then told her to call her doctor to confirm she had herpes. Patricia was able to escape while Joiner listened on a second telephone line.

As a result of the attack on Patricia, Joiner was convicted of assault with intent to commit rape and assault with intent to commit oral copulation, and was sentenced to 11 years in prison. On March 18, 1997, following his release from prison for the assault on Patricia, Joiner was convicted of second degree burglary and again sentenced to prison.

5

b. *Expert testimony*

Two forensic psychologists—Shoba Sreenivasan, Ph.D. and Christopher Matosich, Ph.D.—evaluated Joiner and opined that he met the statutory criteria for an SVP.[3] Both doctors opined that Joiner's convictions for kidnapping Frances B. and assaulting Patricia D. with the intent to commit rape and with the intent to commit oral copulation qualified as sexually violent offenses. Both doctors opined that Joiner suffered from a current mental disorder, paraphilia not otherwise specified (paraphilia NOS), which is a sexual deviancy disorder characterized by intense and recurrent fantasies, urges, or behaviors involving sexual acts against nonconsenting partners. Both doctors found Joiner's paraphilia showed traits of sexual sadism, which was evidenced by his brutality, domination, containment, and choking of his victims. Both doctors also diagnosed Joiner with a personality disorder not otherwise specified with antisocial and paranoid traits. In addition, both doctors opined that Joiner was likely to reoffend by again engaging in sexually violent predatory behavior as a result of his diagnosed mental disorders. They based their respective opinions on actuarial assessments which showed a moderate-to-high risk Joiner would reoffend, the dynamic between Joiner's personality disorder and his paraphilia, his criminal history, including his poor performance on parole, and the continuous nature of his criminality.

---

[3]    A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(l).)

2. *The defense*

The defense rested without presenting any evidence.

B. *Procedural Background*

1. *Petition*

In May 2007 the San Diego County District Attorney filed an amended petition (petition) under the SVPA alleging that Joiner was a sexually violent predator and seeking an order committing him to the custody of the DMH for involuntary treatment for an indeterminate term.

2. *Mistrial and denial of Joiner's motion to dismiss the petition*

The allegations of the petition were first tried to a jury in early 2009. After three days of deliberations the jury advised the court that it was hopelessly deadlocked and the court declared a mistrial. The jury voted eight to four in Joiner's favor.

In April 2009, following the mistrial, Joiner moved to dismiss the petition under Penal Code section 1385 on the ground the prosecution had presented insufficient evidence to prove beyond a reasonable doubt that he was an SVP. In support of his motion, Joiner challenged the testimony of the People's two expert witnesses, Dr. Matosich and Dr. Sreenivasan. The court denied the dismissal motion, stating it believed it lacked the authority to grant the motion.

3. *Retrial, denial of Joiner's renewed motion to dismiss, and commitment order*

In November 2009 the allegations of the petition were tried to a second jury. The jury returned a unanimous verdict finding to be true the allegation in the petition that Joiner is an SVP.

7

At a follow-up hearing, defense counsel renewed Joiner's motion for dismissal of the petition under Penal Code section 1385. The court again denied the motion, stating it believed it lacked the authority to dismiss the petition. The court then entered an order committing Joiner to the custody of the DMH for an indeterminate term for treatment and confinement at the Coalinga State Hospital.

4. *Joiner's first appeal* (*Joiner I*)

In early January 2010 Joiner challenged the court's denial of his postmistrial motion to dismiss, the second jury's unanimous verdict finding he is an SVP, and the order committing him to the custody of the DMH for an indeterminate term, by filing a timely notice of appeal. As pertinent here, Joiner claimed in *Joiner I* that there was insufficient evidence as a matter of law to commit him under the SVPA and that the court erred when it determined it had no authority to dismiss the petition after the first trial ended in a deadlock with the jury split eight to four in favor of finding the petition allegations to be not true.

In a split decision, this court issued a majority opinion on rehearing reversing the commitment order and remanding the matter with directions that the court "exercise its discretion" and rule on the merits of Joiner's motion to dismiss the petition based on its review of the evidence presented at the first trial. The majority opinion, with the concurrence of Justice Benke, concluded that the trial court had inherent power to rule on the merits of Joiner's motion to dismiss and terminate the proceedings under the SVPA following the mistrial if the court determined there was insufficient evidence as a matter of law to sustain the petition. The majority opinion stated that, in the event the trial court

8

determined on remand that "there was sufficient evidence presented at the first trial and that it properly denied Joiner's motion in the first instance, the trial court is directed to enter judgment on the second [jury's] verdict."

In her concurring and dissenting opinion, Justice Benke dissented from the majority's disposition and stated she would have affirmed the commitment order because (1) the inherent power to terminate SVPA proceedings that she and the majority recognized "is not in any sense discretionary" because, once the trial court in such a proceeding "has determined there is probable cause to believe an inmate is [an SVP], [it] has no *discretionary* power to dismiss an SVPA petition"; (2) "we are as well-equipped as the trial court to determine whether there was sufficient evidence of the statutory elements" under the SVPA; and (3) "sufficient evidence [was] presented at the first trial to show that Joiner is an SVP."

     5.  *Denial on remand of Joiner's motion to dismiss the petition*

The court conducted the remand hearing on July 24, 2013. Although the court's minute order shows that Joiner was not personally present during the hearing "per stipulation," he was represented by Shervin Samimi, the deputy alternate public defender who had served as his trial counsel at both trials.

After reviewing the evidence presented at the first trial in the light most favorable to the prosecution (as the *Joiner I* majority opinion directed it to do) and hearing the parties' arguments, the court denied Joiner's motion to dismiss the petition on the merits. The court found that sufficient evidence had been presented at the first trial to support a finding beyond a reasonable doubt by a reasonable trier of fact that Joiner was an SVP.

9

The court then reinstated the order of involuntary commitment under the SVPA based on the second jury's verdict.

DISCUSSION

I. *JOINER'S ABSENCE FROM THE REMAND HEARING*

Joiner first contends the order committing him to the custody of the DSH for an indeterminate term must be vacated and he should be released immediately because (1) he had a constitutional due process right to be personally present during the July 24, 2013 remand hearing on his motion to dismiss the petition, and (2) the court prejudicially erred by conducting that hearing in his absence without his consent or personal waiver. We reject these contentions.

Assuming without deciding that Joiner had a constitutional right to be personally present at the remand hearing,[4] we conclude the court did not err in conducting the hearing in his absence because the record shows he waived his right to be present.

_____

[4]     Joiner arguably had no right to be personally present at the limited remand hearing. "'[A] defendant is not entitled to be personally present during proceedings that bear no reasonable, substantial relation to his opportunity to defend the charges against him, and the burden is on the defendant to demonstrate that his absence prejudiced his case or denied him a fair and impartial trial.'" (*People v. Rodriguez* (2014) 58 Cal.4th 587, 625, quoting *People v. Benavides* (2005) 35 Cal.4th 69, 89.) Here, the first trial ended in a mistrial. This court's majority opinion specifically instructed the trial court that, in making its determination on remand regarding the merits of Joiner's motion to dismiss the petition, it was required to base its decision "upon its review of the record in the first trial" and to view that evidence "in the light most favorable to the People." Thus, Joiner could not have altered the state of the evidence by personally appearing at the remand hearing. Although Joiner asserts he was "the person most likely to recall the most important facts in his favor," the testimony presented at the first trial was preserved in the reporter's transcript, he was represented at the remand hearing by the attorney who had represented him at that trial, and the standard of review we directed the court to use required that it view the evidence in the light most favorable to the prosecution.

10

Specifically, the court's July 24, 2013 minute order shows that Joiner was not personally present during the hearing "per stipulation."

Joiner, however, challenges the court's minute order by asserting that "the reporter's transcript contains no such stipulation." Indeed, the reporter's transcript is silent on this issue. It shows that when Joiner's counsel, Samimi, made his appearance, he stated he was appearing "on behalf of Mr. Joiner, who is not present." Samimi, who had represented Joiner at both trials, did not mention a stipulation. However, it is not uncommon for minute orders to reflect matters that were discussed in court during an unreported part of a proceeding and thus are not reflected in the reporter's transcript. We note that Joiner does not claim Samimi provided ineffective assistance of counsel by failing to object to Joiner's absence.

Joiner cites *People v. Samaniego* (2009) 172 Cal.App.4th 1148 and *People v. Gonzalez* (1990) 51 Cal.3d 1179 (superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691) for the proposition that "California law consistently holds the *oral pronouncement of any order in court* prevails over any *contrary* statements in the minutes and abstract." (Italics added.) His reliance on *Samaniego* is unavailing because, here, unlike in *Samaniego*, there is no "oral pronouncement of [an] order in court" recorded in the reporter's transcript of the remand hearing that is "contrary" to the statement in the court's signed minute order that Joiner "is not present per stipulation." In *Samaniego* the trial court imposed direct victim restitution in a specified amount and orally *ordered* that the restitution was payable jointly and severally among all three defendants in that case. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1183.) However, the

11

defendants' abstracts of judgment did not reflect that the restitution obligation was joint and several. (*Ibid.*) Noting that "[t]he abstract of judgment is not the judgment of conviction" (*ibid.*) and explaining that "[t]he court's oral pronouncement controls over the abstract of judgment" (*ibid.*), the Court of Appeal remanded the matter to the trial court with directions to correct the abstracts of judgment to reflect that the victim restitution was imposed jointly and severally." (*Id.* at p. 1184.) *Samaniego* is distinguishable because it involved an order that the trial court orally pronounced during sentencing but was not reflected in the defendants' abstracts of judgment. Here, there was no oral pronouncement of an order or any other pronouncement during the remand hearing that was contrary to the statement in the court's minute order that Joiner was not present "per stipulation."

Joiner's reliance on *Gonzalez*, *supra*, 51 Cal.3d 1179, is also unavailing. *Gonzalez* is distinguishable in that the trial court made oral rulings in court that conflicted with the unsigned minute order. (*Id.* at pp. 1238-1239.) Here, again, there was no oral pronouncement of any ruling or any other pronouncement during the remand hearing that was contrary to the statement in the court's signed minute order indicating that Joiner was not present "per stipulation."

Even if we were to conclude that Joiner did not waive his assumed constitutional right to be personally present during the remand hearing, and thus that the court erred in conducting that hearing in his absence, we would nevertheless conclude that any such error was harmless beyond a reasonable doubt under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (See *People v. Fisher* (2009) 172 Cal.App.4th 1006,

12

1014 ["In civil commitment proceedings, we use the *Chapman* test to review federal constitutional error."].) Joiner's presence at the remand hearing would *not* have affected the court's ultimate decision to deny his motion to dismiss on the merits because Joiner could not have presented new evidence, the testimony presented at the first trial was preserved in the reporter's transcript that the court reviewed, Joiner was represented at that hearing by the attorney who had represented him at the first trial and was familiar with the evidence, and the standard of review we directed the court to use required that it view the evidence presented at that trial in the light most favorable to the prosecution. Furthermore, as we shall explain, *post*, the court properly found that sufficient evidence had been presented at the first trial to support a finding beyond a reasonable doubt by a reasonable trier of fact that Joiner is an SVP. Thus, no argument that Joiner personally might have made at the remand hearing could have resulted in a more favorable outcome for him.

## II.  *SUFFICIENCY OF THE EVIDENCE*

Joiner also contends the commitment order should be vacated because there is insufficient evidence as a matter of law to commit him under the SVPA. We reject this contention.

### A.  *Substantial Evidence Standard of Review*

"[T]he Fifth Amendment [to the United States Constitution] precludes retrial if a court determines the evidence at trial was insufficient to support a conviction as a matter of law. [Citation.] Thus, an appellate ruling of legal insufficiency is functionally

equivalent to an acquittal and precludes a retrial." (*People v. Hatch* (2000) 22 Cal.4th 260, 272.)

"In reviewing the legal sufficiency of the evidence to support a person's civil commitment as an SVP, we apply the substantial evidence standard of review." (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518 (*Poulsom*).) Under this standard, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence─that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319; *Poulsom*, *supra*, 213 Cal.App.4th at p. 518.)

In *Poulsom* this court recently explained that "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*Poulsom*, *supra*, 213 Cal.App.4th at p. 518.) We also explained that "'[t]he credibility of the experts and their conclusions [are] matters [to be] resolved . . . by the [trier of fact],' and '[w]e are not free to reweigh or reinterpret [that] evidence.'" (*Ibid*., quoting *People v. Mercer* (1999) 70 Cal.App.4th 463, 466-467.) In sum, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314; *Poulsom*, *supra*, 213 Cal.App.4th at p. 518.)

"[T]o prevail on a sufficiency of the evidence argument, the defendant must present his case to us consistently with the substantial evidence standard of review. That is, the defendant must set forth in his opening brief all of the material evidence on the

14

disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574, italics omitted.) "If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the [trier of fact's] verdict may lie in the evidence he ignores." (*Ibid.*)

Furthermore, the California Supreme Court has explained that, "when reviewing the sufficiency of the evidence for purposes of deciding whether retrial is permissible, the reviewing court must consider *all* of the evidence presented at trial, *including evidence that should not have been admitted*. '[W]here the evidence offered by the State and admitted by the trial court—*whether erroneously or not*—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.'" (*People v. Story* (2009) 45 Cal.4th 1282, 1296-1297, quoting *Lockhart v. Nelson* (1988) 488 U.S. 33, 34, second & third italics added.)

B. *Analysis*

1. *Likelihood of reoffending*

Joiner first contends no substantial evidence was presented at the first trial to support a finding that he is likely to commit a predatory act of sexual violence if released. We reject this contention.

To find a defendant is an SVP under the SVPA, the trier of fact "must find beyond a reasonable doubt that the defendant is likely to commit sexually violent *predatory*

15

criminal acts." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1186-1187.)  The SVPA defines a "predatory" act as "an act . . . directed toward a stranger, a *person of casual acquaintance with whom no substantial relationship exists*, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e), italics added.)

Here, the prosecution presented at the first trial substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Joiner was likely to engage in sexually violent predatory criminal behavior.  Dr. Matosich, a licensed psychologist who had conducted SVP evaluations in California for about 13 years, opined that Joiner was likely to reoffend by engaging in sexually violent predatory criminal behavior in the future as a result of his diagnosed mental disorders without appropriate treatment in custody.  Dr. Matosich explained that his opinion was based in part on Joiner's Static-99 actuarial risk assessment score, which placed in the high risk category for sexual recidivism.  Dr. Matosich applied the proper meaning of the term "predatory" as defined in section 6600, subdivision (e), and testified that Joiner's prior victims were "individuals of casual acquaintance with whom no substantial relationship existed."  Dr. Matosich's foregoing testimony provided substantial evidence to support a finding that Joiner was likely to engage in future sexually violent predatory crimes without appropriate treatment in custody.  (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1063 ["[N]othing in the SVP Act expressly requires the testimony of two (or any particular number of) expert witnesses at trial to find that an individual is a sexually violent predator."].)

Although Dr. Matosich's expert testimony provided substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Joiner was likely to engage in sexually violent predatory criminal behavior, Dr. Sreenivasan—another licensed psychologist who in the previous 13 years had performed 700 to 800 SVPA evaluations—also provided expert opinion testimony at the first trial that, as a result of his diagnosed mental disorders, Joiner "was likely to engage in sexually violent predatory behavior without appropriate treatment in custody."

Joiner contends, however, that the expert opinion testimony of Dr. Matosich and Dr. Sreenivasan that he is likely to engage in sexually violent predatory criminal behavior in the future is "insufficient as a matter of law" because their testimony is "unsupported by an adequate foundation." In his reply brief Joiner asserts that "even though Dr. Sreenivasan testified she believed [he] was at risk for reoffending in a sexually predatory manner, she did not explain the basis for that opinion." Stating that Dr. Matosich "claimed to base his opinion on his belief that the complainants in [his (Joiner's)] prior cases involved 'individuals of casual acquaintance with whom no substantial relationship existed,'" Joiner asserts that "that was not true." Joiner further asserts that Dr. Matosich "did not explain why the women were supposedly 'individuals of casual acquaintance' or how he understood that term."

In making these assertions to challenge the substantiality and sufficiency of Dr. Matosich's and Dr. Sreenivasan's expert testimony, Joiner disregards one of the fundamental principles governing the application of the substantial evidence standard of review, which the Attorney General explains in the respondent's brief. As discussed,

17

*ante*, the California Supreme Court has explained that "when reviewing the sufficiency of the evidence for purposes of deciding whether retrial is permissible, the reviewing court must consider *all* of the evidence presented at trial, *including evidence that should not have been admitted*." (*People v. Story*, *supra*, 45 Cal.4th at p. 1296, second italics added.) Here, the court admitted the foregoing testimony of Dr. Matosich and Dr. Sreenivasan without any objections from the defense. We must, and do, consider this evidence. (*Ibid*.) To the extent that testimony should have been supported by additional evidentiary foundation, as Joiner now claims on appeal, the lack of such foundation goes to the weight, not the admissibility or legal sufficiency, of the testimony. In reviewing the legal sufficiency of the evidence to support a person's civil commitment as an SVP, we do *not* reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314; *Poulsom*, *supra*, 213 Cal.App.4th at p. 518.) As we recently explained in *Poulsom*, "'[t]he credibility of the experts and their conclusions [are] matters [to be] resolved . . . by the [trier of fact],' and '[w]e are not free to reweigh or reinterpret [that] evidence.'" (*Poulsom*, *supra*, 213 Cal.App.4th at p. 518, quoting *People v. Mercer, supra,* 70 Cal.App.4th at pp. 466–467.) Thus, this court, like the trial court in reviewing the evidence presented at the first trial in ruling on Joiner's motion to dismiss at the remand hearing, is not free to reweigh or reinterpret the expert witness testimony of Dr. Matosich and Dr. Sreenivasan. (*Poulsom*, at p. 518.)

18

2. *Volitional Impairment*

Joiner next contends no substantial evidence was presented at the first trial to support a finding that he "lack[s] volitional control over sexually aggressive behavior." We reject this contention.

a. *Applicable legal principles*

"In *Kansas v. Crane* (2002) 534 U.S. 407, [413], the United States Supreme Court held that the safeguards of personal liberty embodied in the due process guaranty of the federal Constitution prohibit the involuntary confinement of persons on the basis that they are dangerously disordered without 'proof [that they have] *serious difficulty in controlling* [*their dangerous*] *behavior*.'" (*People v. Williams* (2003) 31 Cal.4th 757, 759 (*Williams*), italics added.) However, "California's [SVPA] does not use that precise language in defining who is eligible for involuntary civil commitment as a sexually violent predator." (*Williams*, *supra*, 31 Cal.4th at p. 759.)

In *Williams*, the California Supreme Court explained that, "[b]y its express terms, the SVPA limits persons eligible for commitment to those few who have already been convicted of violent sexual offenses against multiple victims (§ 6600, subd. (a)(1)), and who have 'diagnosed mental disorder[s]' (*ibid*.) 'affecting the *emotional or volitional capacity*' (*id*., subd. (c)) that 'predispose[] [them] to the commission of criminal sexual acts in a degree constituting [them] menace[s] to the health and safety of others' (*ibid*.), such that they are "likely [to] engage in sexually violent criminal behavior' (*id*., subd. (a)(1))." (*Williams*, *supra*, 31 Cal.4th at p. 759, italics added.) The *Williams* court concluded that "[t]his language inherently encompasses and conveys to a fact finder the

19

requirement of a mental disorder that causes *serious difficulty in controlling one's criminal sexual behavior*." (*Ibid*., italics added.)

b. *Analysis*

We conclude the prosecution presented at the first trial substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Joiner has "serious difficulty in controlling [his] criminal sexual behavior" (*Williams*, *supra*, 31 Cal.4th at p. 759) constituting the requisite volitional impairment under the SVPA as a result of his diagnosed mental disorders. Dr. Matosich testified that, in determining whether Joiner has a diagnosed mental disorder, he specifically looked at whether Joiner has a condition that compromises his "capacity for emotional and volitional control" and whether that disorder predisposes him to commit criminal sexual acts. Dr. Matosich opined that Joiner suffers from paraphilia NOS and a personality disorder with antisocial and paranoid traits, which are diagnosed mental disorders that meet that criteria. In explaining Joiner's serious difficulty in controlling his behavior, Dr. Matosich opined that Joiner has "a personality construct of the lack of remorse, callousness, lack of empathy, irritability, aggression, as well as behavioral constructs of impulsivity, not learning from past experience, repeatedly doing the similar behavior, going back into custody despite the sanctions, doing the activity again and again." Dr. Matosich also testified that Joiner had clear difficulty in "accommodating [his] behavior to remain in the community in a safe and effective manner."

Dr. Sreenivasan also gave expert testimony from which a reasonable trier of fact could find beyond a reasonable doubt that Joiner has serious difficulty in controlling his

20

criminal sexual behavior that constitutes the requisite volitional impairment under the SVPA as a result of his diagnosed mental disorders. Like Dr. Matosich, Dr. Sreenivasan opined that Joiner suffers from paraphilia NOS and a personality disorder with antisocial and paranoid traits. Dr. Sreenivasan explained the foundation for her opinion that Joiner had impaired volitional control as a result of these diagnosed mental disorders. Specifically, she testified, "[M]y overall conclusion was because of this collective set of disorders, sexual deviancy, that he has repeatedly not been deterred by sanction, coupled with the chronicity of the personality disorder, angry and paranoid in nature, the two things together represent a disorder, a *derailing of him in terms of volitional control*, in terms of his impulsivity as well as his emotionality, the anger, the hostility and so forth." For these reasons we reject Joiner's assertion that Dr. Sreenivasan "did not explain the basis or foundation for [her] opinion" that his diagnosed mental disorders "derailed" his volitional control.

In claiming no substantial evidence was presented at the first trial to support a finding that he lacks volitional control over sexually aggressive behavior, Joiner improperly resorts to evidence outside the trial record. Specifically, with no citation to the record of the first trial, Joiner quotes from a journal article─written by Dr. Michael First, one of the editors of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders Text Revision (DSM-IV-TR)─for the proposition that "having a diagnosis of paraphilia does not imply that the person also has difficulty controlling his behavior." In doing so, Joiner essentially is asking this court not only to consider evidence not presented at the first trial, but also to reweigh the evidence and

21

reassess the credibility of the prosecution's experts.  This we may not do.  As already discussed, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses.  (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314; *Poulsom*, *supra*, 213 Cal.App.4th at p. 518.)

3.  *Mental Disorders*

Last, Joiner contends no substantial evidence was presented at the first trial to support a finding that he has "a current mental disorder tied to sexual misconduct." Specifically, Joiner asserts the court erred in denying his motion to dismiss the SVPA petition, and thus the commitment order should be vacated because (1) the diagnosis of paraphilia NOS "has been continually criticized" since his first trial in this matter, and thus his "alleged mental illness does not even exist"; and (2) his paraphilia NOS diagnosis was based on his behavior "that was more than 20 years in the past," and thus "the paraphilia label did not adequately prove a *currently* diagnosed mental illness under the SVPA."  Joiner's assertions are unavailing.

As already discussed, both of the People's expert witnesses─Dr. Matosich and Dr. Sreenivasan─testifed during the first trial to their opinions that Joiner currently suffers from paraphilia NOS and a personality disorder with antisocial and paranoid traits.  Both doctors testified that Joiner's paraphilia is a sexual deviancy disorder which, combined with his personality disorder, predisposes him to commit future sexually violent predatory offenses.

In asserting that his "alleged mental illness does not even exist" because the diagnosis of paraphilia NOS "has been continually criticized" since his first trial, Joiner

again improperly resorts to evidence outside the trial record. Specifically, with no citation to the record of the first trial, Joiner selectively quotes passages from the DSM-IV-TR and an article written by Allen Frances, M.D. In doing so, Joiner again disregards well-established rules governing application of the substantial evidence standard of review by asking this court not only to consider evidence not presented at the first trial, but also to reweigh the evidence and reassess the credibility of the prosecution's experts. This we may not do. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314; *Poulsom*, *supra*, 213 Cal.App.4th at p. 518.)

In asserting that his paraphilia NOS diagnosis "was based on behavior by [him] that was more than 20 years in the past," Joiner suggests that Dr. Matosich and Dr. Sreenivasan based their diagnoses solely on his prior history of committing sexually violent acts. Citing an article by Dr. Frances, Joiner asserts that the fifth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-5) "reject[s] . . . efforts to refer to rape as a mental disorder." Based on his suggestive premise, Joiner then asserts that Dr. Matosich's and Dr. Sreenivasan's "conclusions that [his] alleged coercive acts were driven by some kind of paraphilia lacked an adequate medical foundation and should be rejected." The record of the first trial belies this assertion because it shows that Dr. Matosich and Dr. Sreenivasan did not (in Joiner's words) "refer to rape as a mental disorder." Dr. Matosich specifically acknowledged that not all rapists have a sexual deviancy, and he explained why he formed the opinion that Joiner does. Specifically, Dr. Matosich testified as follows:

23

"In addition to the long period of sexually aggressive behavior, the specific acts that unfolded during those behaviors are specific in diagnosing paraphilia. There is controversy over whether everybody that [*sic*] rapes has a sexual deviancy. I think most in the field . . . see some individuals that [*sic*] rape that do not have a sexual deviancy. We look closely at the behavior, and those with sexual deviancy, their behavior is remarkably different. We see the callousness, the cruelty, the time one is held hostage or locked under their control.

"These are things that we look at in assessing not only paraphilia but the type of paraphilia, severity of paraphilia and risk of future behavior related to with or without treatment. *So for Mr. Joiner, I saw several examples of callousness, cruelty, aggression above and beyond what a typical man needs to exert to control a woman. That there was sexual excitement, even ejaculation while the victim was in pain. These are things that, in my opinion, clearly support the presence of a severe sexual deviancy*." (Italics added.)

The record shows that Dr. Sreenivasan also considered Joiner's *specific* behaviors, and that, like Dr. Matosich, she did not rely solely on evidence that he committed rapes. The experts' opinions were substantial evidence that Joiner suffered from a current mental disorder tied to sexual deviancy.

For all of the foregoing reasons, we reject Joiner's contention that no substantial evidence was presented at the first trial to support a finding that he has "a current mental disorder tied to sexual misconduct." Based on the expert testimony of Dr. Matosich and Dr. Sreenivasan at the first trial, we conclude the prosecution presented substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Joiner suffers from current mental disorders—paraphilia NOS and a personality disorder with antisocial and paranoid traits—that make him danger to the health and safety of

24

others in that he is likely to engage in sexually violent criminal behavior.[5]  (§ 6600, subds. (a)(1), (c).)  Accordingly, we affirm the commitment order.

## DISPOSITION

The order of the trial court committing Joiner to the custody of the DSH under the SVPA is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

---

[5]    In so concluding, we need not address the Attorney General's claim that Joiner forfeited his insufficiency of the evidence argument by refusing to be interviewed by Dr. Matosich and Dr. Sreenivasan.  (Cf. *People v. Sumahit* (2005) 128 Cal.App.4th 347, 351 [concluding insufficiency argument was forfeited when person refused to be interviewed by the People's experts].)

25